# 25-1905

*To Be Argued By*:
MARY ELLEN BRENNAN

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

## Docket No. 25-1905

━━◀◆◆▶━━

AMERICAN COUNCIL OF LEARNED SOCIETIES,
AMERICAN HISTORICAL ASSOCIATION,
MODERN LANGUAGE ASSOCIATION OF AMERICA,

*Plaintiffs-Appellants,*

THE AUTHORS GUILD, on behalf of themselves and all others
similarly situated, WILLIAM GOLDSTEIN, on behalf of themselves
and all others similarly situated, ELIZABETH KADETSKY, on

*(Caption continued on inside cover)*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

## BRIEF FOR DEFENDANTS-CONSOLIDATED
## DEFENDANTS-APPELLEES

JAY CLAYTON,
*United States Attorney for the
Southern District of New York,
Attorney for Defendants-Appellees.*
86 Chambers Street, 3rd Floor
New York, New York 10007
(212) 637-2652

MARY ELLEN BRENNAN,
RACHAEL DOUD,
JONAKI M. SINGH,
BENJAMIN H. TORRANCE,
  *Assistant United States Attorneys,*
    *Of Counsel.*

behalf of themselves and all others similarly situated, VALARIE ORLANDO, on behalf of themselves and all others similarly situated, KATALIN BALOG, on behalf of themselves and all others similarly situated, BENJAMIN HOLTZMAN, on behalf of themselves and all others similarly situated, LEE JASPERSE, on behalf of themselves and all others similarly situated, NICOLE JENKINS, on behalf of themselves and all others similarly situated,

*Consolidated Plaintiffs,*

—v.—

ADAM WOLFSON, in his official capacity as Acting Chairman of the National Endowment for the Humanities, NATIONAL ENDOWMENT FOR THE HUMANITIES, UNITED STATES DOGE SERVICE, AMY GLEASON, in her official capacity as Acting Administrator of the United States DOGE Service, NATE CAVANAUGH, in his official capacity as an employee of the U.S. DOGE Service or the General Services Administration, JUSTIN FOX, in his official capacity as an employee of the U.S. DOGE Service or the General Services Administration,

*Defendants-Consolidated Defendants-Appellees.*

# TABLE OF CONTENTS

PAGE

Preliminary Statement . . . . . . . . . . . . . . . . . . . . . . . .  2

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . .  3

Issue Presented for Review . . . . . . . . . . . . . . . . . . . .  4

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . .  4

    A.  Procedural History . . . . . . . . . . . . . . . . . . . .  4

    B.  Statutory Background . . . . . . . . . . . . . . . . .  5

    C.  Plaintiffs' Complaint and Motion for a
       Preliminary Injunction. . . . . . . . . . . . . . . . .  6

    D.  The District Court's Decision. . . . . . . . . . . .  8

Summary of Argument . . . . . . . . . . . . . . . . . . . . . .  10

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

The District Court Correctly Dismissed Plaintiffs'
    Claims for Lack of Standing . . . . . . . . . . . . . . .  11

    A.  Standard of Review. . . . . . . . . . . . . . . . . . .  11

    B.  Plaintiffs Lack Article III Standing. . . . . .  12

        1.  Plaintiffs' Claims Were Properly
           Dismissed for Lack of Standing . . . . .  13

        2.  The Preliminary Injunction Was
           Properly Denied . . . . . . . . . . . . . . . . . .  25

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  26

ii

PAGE

## TABLE OF AUTHORITIES

*Cases*:

*Agudath Israel v. Cuomo,*
 980 F.3d 222 (2d Cir. 2020) . . . . . . . . . . . . . . . . 26

*Allen v Wright,*
 468 U.S. 737 (1984). . . . . . . . . . . . . . . . . . . . . . . 14

*Apache Bend Apartments, Ltd. v. United States,*
 987 F.2d 1174 (5th Cir. 1993) . . . . . . . . . . . . 16, 17

*Aurecchione v. Schoolman Trans. Sys., Inc.,*
 426 F.3d 635 (2d Cir. 2005) . . . . . . . . . . . . . . . . 11

*Brown v. City of New York,*
 862 F.3d 182 (2d Cir. 2017) . . . . . . . . . . . . . . . . 24

*Carney v. Adams,*
 592 U.S. 53 (2020). . . . . . . . . . . . . . .   15, 17, 18, 20

*CC Distributors, Inc. v. United States,*
 883 F.2d 146 (D.C. Cir. 1989). . . . . . . . . . . . . . . 21

*Clapper v. Amnesty Int'l USA,*
 568 U.S. 398 (2013). . . . . . . . . . . . . . . . . . . . . . . 13

*Coalition of MISO Transmission Customers v.*
 *Federal Energy Regulatory Commission,*
 45 F.4th 1004 (D.C. Cir. 2022). . . . . . . . . . . . . . 20

*County of Nassau v. Leavitt,*
 524 F.3d 408 (2d Cir. 2008) . . . . . . . . . . . . . . . . 12

*Do No Harm v. Pfizer Inc.,*
 126 F.4th 109 (2d Cir. 2025) . . . . . . . . . . . . . . . 25

iii

PAGE

*Duke Power Co. v. Carolina*
  *Environmental Study Group, Inc.,*
  438 U.S. 59 (1978). . . . . . . . . . . . . . . . . . . . . . . . . 22

*E.M. v. New York City Dep't of Education,*
  758 F.3d 442 (2d Cir. 2014) . . . . . . . . . . . . . . . . . 22

*FDA v. Alliance for Hippocratic Medicine,*
  602 U.S. 367 (2024). . . . . . . . . . . . . . . . . . . . . . 13, 15

*Global Health Council v. Trump,*
  153 F.4th 1 (D.C. Cir. 2025). . . . . . . . . . . . . . . . . 21

*Granite State Outdoor Advertising, Inc. v.*
  *Town of Orange,*
  303 F.3d 450 (2d Cir. 2002) . . . . . . . . . . . . . . . . . 12

*International Longshoremen's and*
  *Warehousemen's Union v. Meese,*
  891 F.2d 1374 (9th Cir. 1989) . . . . . . . . . . . . . . . 20

*Johnson v. Becerra,*
  111 F.4th 1237 (D.C. Cir. 2024). . . . . . . . . . . . . . 14

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992). . . . . . . . . . . . . . 12, 14, 17, 19

*Mantena v. Johnson,*
  809 F.3d 721 (2d Cir. 2015) . . . . . . . . . . . . . . . . . 20

*MGM Resorts International Global Gaming*
  *Development, LLC v. Malloy,*
  861 F.3d 40 (2d Cir. 2017) . . . . . . . . . . . . . . . . . . 18

*Munaf v. Geren,*
  553 U.S. 674 (2008). . . . . . . . . . . . . . . . . . . . . . . 25

iv

PAGE

*Murthy v. Missouri,*
    603 U.S. 43 (2024). . . . . . . . . . . . . . . . . . . . . . . . . 13

*Raines v. Byrd,*
    521 U.S. 811 (1997). . . . . . . . . . . . . . . . . . . . . . . . 19

*Singleton v. Wulff,*
    428 U.S. 106 (1976). . . . . . . . . . . . . . . . . . . . . . . . 24

*Sprint Communications Co. v. APCC Services, Inc.,*
    554 U.S. 269 (2008). . . . . . . . . . . . . . . . . . . . . . . . 19

*Sulzer Mixpac AG v. A&N Trading Co.,*
    988 F.3d 174 (2d Cir. 2021) . . . . . . . . . . . . . . . . . 24

*Teton Historic Aviation Found. v. DoD,*
    785 F.3d 719 (D.C. Cir. 2015). . . . . . . . . . . . . . . 21

*Valley Forge Christian College v. Americans United
    for Separation of Church & State, Inc.,*
    454 U.S. 464 (1982). . . . . . . . . . . . . . . . . . . . . . . . 15

*Warth v. Seldin,*
    422 U.S. 490 (1975). . . . . . . . . . . . . . . . . . . . . . 13, 17

*Women's Equity Action League v. Bell,*
    743 F.2d 42 (D.C. Cir. 1984). . . . . . . . . . . . . . . . 14

*Statutes*:

20 U.S.C. § 951 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20 U.S.C. § 956 . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

28 U.S.C. § 1292 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

v

PAGE

28 U.S.C. § 1356 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Other Authorities*:

Pub. L. 89-209 (Sept. 29, 1965) . . . . . . . . . . . . . . . . . . 5

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

### Docket No. 25-1905

---

AMERICAN COUNCIL OF LEARNED SOCIETIES,
AMERICAN HISTORICAL ASSOCIATION,
MODERN LANGUAGE ASSOCIATION OF AMERICA,

*Plaintiffs-Appellants,*

THE AUTHORS GUILD, ON BEHALF OF THEMSELVES AND
ALL OTHERS SIMILARLY SITUATED, WILLIAM GOLDSTEIN,
ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY
SITUATED, ELIZABETH KADETSKY, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,
VALARIE ORLANDO, ON BEHALF OF THEMSELVES AND
ALL OTHERS SIMILARLY SITUATED, KATALIN BALOG, ON
BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY
SITUATED, KATALIN BALOG, ON BEHALF OF THEMSELVES
AND ALL OTHERS SIMILARLY SITUATED, BENJAMIN
HOLTZMAN, ON BEHALF OF THEMSELVES AND ALL
OTHERS SIMILARLY SITUATED, LEE JASPERSE, ON
BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY
SITUATED, NICOLE JENKINS, ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY SITUATED,

*Consolidated Plaintiffs,*

—v.—

ADAM WOLFSON, IN HIS OFFICIAL CAPACITY AS ACTING
CHAIRMAN OF THE NATIONAL ENDOWMENT FOR THE
HUMANITIES, NATIONAL ENDOWMENT FOR THE
HUMANITIES, UNITED STATES DOGE SERVICE,

2

AMY GLEASON, IN HER OFFICIAL CAPACITY AS ACTING
ADMINISTRATOR OF THE UNITED STATES DOGE
SERVICE, NATE CAVANAUGH, IN HIS OFFICIAL CAPACITY
AS AN EMPLOYEE OF THE U.S. DOGE SERVICE OR THE
GENERAL SERVICES ADMINISTRATION, JUSTIN FOX, IN
HIS OFFICIAL CAPACITY AS AN EMPLOYEE OF THE U.S.
DOGE SERVICE OR THE GENERAL SERVICES
ADMINISTRATION,

*Defendants-Consolidated Defendants-Appellees.*

## BRIEF FOR DEFENDANTS-CONSOLIDATED DEFENDANTS-APPELLEES

### Preliminary Statement

Plaintiffs-appellants the American Council of Learned Societies, the American Historical Association, and the Modern Language Association of America —non-profit entities that have received grants from the National Endowment for the Humanities ("NEH") —brought this action challenging the termination of those grants, as well as various other agency activities, including the reduction-in-force of certain staff members and the elimination of certain grant programs and program offices. The action as it pertains to termination of grants is proceeding in the district court, but as to the claims regarding closing NEH offices and eliminating programs, the district court denied a preliminary injunction and dismissed those claims for lack of standing.

3

Those decisions should be affirmed. Limited to the questions before this Court, this action essentially seeks to require NEH to carry out its mission in a particular way, by instituting a certain internal office structure and by offering certain programs. The district court correctly held that those are types of grievances that are not judicially cognizable, as they do not present redressable injuries in fact that suffice to establish plaintiffs' standing. Because the district court's decision accords with well established jurisdictional principles, its order should be affirmed.

## Jurisdictional Statement

As explained below, the district court lacked subject matter jurisdiction, which was invoked under 28 U.S.C. §§ 1331 and 1346(a)(2). (Joint Appendix ("JA") 29).[1] The district court entered an order denying plaintiffs' request for a preliminary injunction and dismissing the claims at issue on July 25, 2025. (JA 596-677). Plaintiffs filed a timely notice of appeal on July 31, 2025. (JA 678). Therefore, this Court has jurisdiction under 28 U.S.C. § 1292(a)(1).

---

[1] The complaint cites 28 U.S.C. § 1356(a)(2), which does not exist. Section 1346(a)(2) is the jurisdictional component of the Little Tucker Act, which applies to contractual claims against the government for $10,000 or less.

4

## Issue Presented for Review

Whether plaintiffs lack Article III standing to challenge the elimination of certain grant programs and program offices at NEH.

## Statement of the Case

### A.  Procedural History

Plaintiffs commenced this lawsuit on May 1, 2025, challenging actions taken with respect to NEH in early April 2025, including the termination of their grants and those of their members, the agency's reduction in its number of employees, the elimination of certain NEH programs and divisions, and NEH's decision to provide funding for a project called the Garden of Heroes. (JA 22-67). On May 12, 2025, plaintiffs in another case, *The Authors Guild v. National Endowment for the Humanities* (the "Authors Guild plaintiffs"), filed a putative class action against the same defendants, raising some of the same claims. (Case No. 25 Civ. 3923 (S.D.N.Y.), ECF No. 1). The district court consolidated this case with the *Authors Guild* case on May 14, 2025. (Dist. Ct. ECF No. 52). Also on May 14, 2025, plaintiffs moved for a preliminary injunction. (Dist. Ct. ECF No. 24). On May 23, 2025, the plaintiffs in the *Authors Guild* case filed a motion for a preliminary injunction. (Dist. Ct. ECF No. 65). On May 30, 2025, the government moved to dismiss the complaints in both cases. (Dist. Ct. ECF Nos. 76, 77).

In an opinion and order dated July 25, 2025, the district court (Colleen McMahon, J.) granted in part and denied in part the government's motion to dismiss

5

the complaints. (JA 596-677). Relevant here, the court held that plaintiffs lacked standing to pursue claims challenging conduct other than the termination of their grants. (JA 635-37). The district court also denied plaintiffs' motion for a preliminary injunction. (JA 648).[2]

Plaintiffs filed a notice of interlocutory appeal on July 31, 2025. (JA 678).

## B.  Statutory Background

NEH was created by statute in 1965. *See* National Foundation on the Arts and the Humanities Act, Pub. L. 89-209, 20 U.S.C. § 951(1) (Sept. 29, 1965). The statute provides that "[t]he Endowment shall be headed by a chairperson, who shall be appointed by the President, by and with the advice and consent of the Senate." 20 U.S.C. § 956(b). "The Chairperson, with the advice of the National Council on the Humanities . . . , is authorized to enter into arrangements, including contracts, grants, loans, and other forms of assistance, to" carry out various specified purposes, including to "initiate and support research and programs to strengthen the research and teaching potential of the

---

[2]  The court granted in part the Authors Guild plaintiffs' motion for a preliminary injunction. (JA 648). That preliminary injunction, which the court imposed in favor of the putative class, stayed the termination of class members' grants *pendente lite* and enjoined defendants from re-obligating the funds that would have been paid under the grants. (Dist. Ct. ECF No. 122).

6

United States in the humanities by making arrangements with individuals or groups to support such activities," and to "initiate and support programs and research which have substantial scholarly and cultural significance and that reach, or reflect the diversity and richness of our American cultural heritage, including the culture of, a minority, inner city, rural, or tribal community." *Id.* § 956(c).

### C. Plaintiffs' Complaint and Motion for a Preliminary Injunction

Plaintiffs are three non-profit entities that have received grants from NEH and that have members who received grants from NEH. (JA 26-28). In their complaint, they asserted two "categories of claims." (JA 54-55). First, they asserted what they described as "Institutional Claims," which challenged "institutional actions taken at NEH," including eliminating divisions, shutting down programs, firing staff, funding the Garden of Heroes, and "delay[ing] spending or outright refus[ing] to spend" appropriated funds. (JA 54). On appeal, plaintiffs have abandoned their claims challenging the reduction of staff, the funding of the Garden of Heroes, and the expenditure of appropriations and have limited their Institutional Claims to the elimination of grant programs and program offices. (Brief for Appellants ("Br.") 13 n.2). Plaintiffs brought their Institutional Claims under the Administrative Procedure Act ("APA") and "nonstatutory" bases arising from alleged "unconstitutional and *ultra vires* actions." (JA 54-65).

7

Second, they asserted what they termed "Grant Termination Claims," *i.e.*, claims challenging the termination of grants previously awarded to them or to their members (JA 55); those claims are proceeding in the district court and are not at issue on appeal. Both categories of claims included contentions that the government violated the First Amendment by engaging in unlawful viewpoint discrimination. (JA 62-64). In their request for relief, plaintiffs asked the district court to "declare unlawful and set aside" defendants' actions and enjoin defendants from "enforcing and giving effect to" the various decisions they challenged. (JA 66).

The Institutional Claims that plaintiffs have not abandoned on appeal include allegations that NEH "eliminated or nearly eliminated . . . several programs and divisions from which plaintiffs and their members have received grants and anticipated applying for new grants in the future." (JA 24-25; Br. 8-9 (claiming that prior to 2025, NEH "offered '47 grant programs to support museums, historic sites, colleges, universities, K-12 teachers, libraries, public television and radio stations, research institutions, independent scholars, and nonprofits nationwide'" (quoting archived link to NEH's website))). They complain that, in 2025, NEH eliminated "numerous prospective grant programs for which NEH had already solicited and begun accepting applications for new awards, or for which NEH had announced specific dates in 2025 on which applications would become available." (Br. 10). Plaintiffs also challenge the elimination of "entire offices" at NEH that "offered and ran grant programs"—specifically, the Office of Digital Humanities, the Office of Data and

8

Evaluation, and the Office of Challenge Programs, among others. (Br. 11).

In seeking a preliminary injunction, plaintiffs asked the district court to enjoin the government from "(1) enforcing their decisions to eliminate or nearly eliminate [NEH] divisions, programs and offices; mass-terminate staff; delay spending or fail to spend appropriated funds; [and] (2) enforcing and giving effect to the termination of plaintiffs' grants and the grants of their members." (Dist. Ct. ECF No. 24). They also sought an injunction requiring Defendants "to obligate and spend funds appropriated to NEH by Congress without intentional delay." (*Id.*). Plaintiffs argued in their motion papers that they were entitled to an injunction with respect to the "institutional actions" because those actions violated the APA, constitutional separation of powers, and the Impoundment Control Act. (Dist. Ct. ECF No. 25). They sought a preliminary injunction with respect to the termination of their grants only on the basis that the termination of grants constituted an *ultra vires* action by the U.S. DOGE Service. (*Id.*).

## D.  The District Court's Decision

In the July 25, 2025, decision and order, the district court held that plaintiffs lacked standing to pursue their so-called Institutional Claims. (JA 635-36). The district court explained that the governmental actions plaintiffs challenged through those Institutional Claims "were not directly visited upon Plaintiffs" and "not sufficiently traceable to the injury of the allegedly

9

illegal termination of already awarded grants." (JA 635).

Regarding plaintiffs' challenge to "NEH's decision not to operate particular programs or offer particular opportunities in the future," the district court acknowledged plaintiffs' argument that "they or their members applied, or were preparing to apply, for specific grant programs that have been eliminated," but rejected the notion that the cancellation of certain grant programs represented a cognizable "'loss of an opportunity to compete.'" (JA 636). The court distinguished this Court's precedent discussing a visa beneficiary who "was already engaged in a formal adjudicatory process," as opposed to plaintiffs here, who alleged "the sort of 'generalized grievance' about government agency operations, which courts have consistently held does not, by itself, amount to an injury-in-fact under Article III." (JA 636).

The court further determined that plaintiffs' claims regarding the mass firing of staff and the "loss of entire grant programs" suffered from the same infirmities. (JA 636-37). As the court explained, "the causal chain between the general termination programs and the firing of staff and the impact on the ACLS Plaintiffs' operations or on the careers of their members is far too attenuated to support standing." (JA 636-37). The court also held that certain of plaintiffs' claims were not ripe for judicial review. (JA 637-38).

The district court denied the government's motion to dismiss plaintiffs' claims that the termination of their grants violated the First Amendment and was *ultra vires*. (JA 639-47).

10

In denying plaintiffs' motion for a preliminary injunction, the district court explained that because it had dismissed the majority of plaintiffs' claims on jurisdictional grounds, plaintiffs' motion rested "*only* on their claim that DOGE acted beyond its authority." (JA 648). The court noted that plaintiffs "specifically did not seek the injunction on their First Amendment claims," and, thus, plaintiffs' claim that DOGE acted *ultra vires* in terminating their grants was "the only ground on which [they] moved for preliminary relief that has not been dismissed on standing or ripeness grounds." (JA 648, 662). Because the court concluded that plaintiffs had not demonstrated that they were likely to succeed on the merits of their claim that the U.S. DOGE Service acted *ultra vires* in connection with the grant terminations, it denied their motion. (JA 648).

## Summary of Argument

This Court should affirm the district court's order dismissing plaintiffs' complaint and denying a preliminary injunction for lack of standing. Plaintiffs fail to establish that they suffered an injury in fact redressable by a court order, as required to establish Article III standing. The only claims before this Court are the Institutional Claims through which plaintiffs challenge NEH's decisions regarding elimination of certain programs and offices within its internal structure. Plaintiffs have not suffered a cognizable injury from those decisions. Courts do not have jurisdiction to require the Executive branch to enforce and administer the laws in a particular manner or to address abstract general interests, as those matters are reserved for the

11

political branches. As the district court recognized, those principles mean that it lacked jurisdiction to address NEH's decisions to restructure or eliminate certain programs, decisions that affect all members of the public equally. While plaintiffs assert that they may wish to apply for certain grants that have been discontinued, most of their allegations are too indeterminate to support their standing. And even where they allege a more tangible effort to obtain a future grant, they have no legally protected interest in government programs that are not being offered. Nor would the declaratory judgment or injunction plaintiffs seek redress any alleged injury, as the restoration of an office or program would not necessarily mean the restoration of the funding opportunities plaintiffs actually wish to pursue. For those reasons, the district court correctly dismissed the claims now before this Court, and properly denied a preliminary injunction.

## **A R G U M E N T**

### **The District Court Correctly Dismissed Plaintiffs' Claims for Lack of Standing**

### **A.  Standard of Review**

In reviewing the dismissal of a complaint for lack of subject matter jurisdiction under Rule 12(b)(1), this Court "review[s] the district court's factual findings for clear error and its legal conclusions *de novo*." *Aurecchione v. Schoolman Trans. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "When reviewing a district court's denial of a preliminary injunction, [the Court]

12

review[s] the district court's legal holdings de novo and its ultimate decision for abuse of discretion." *County of Nassau v. Leavitt*, 524 F.3d 408, 414 (2d Cir. 2008) (quotation marks omitted).

## B. Plaintiffs Lack Article III Standing

The Court should affirm the district court's order dismissing certain claims and denying a preliminary injunction because plaintiffs have failed to establish Article III standing and, accordingly, cannot establish likelihood of success on the merits of their claims. *Granite State Outdoor Advertising, Inc. v. Town of Orange*, 303 F.3d 450, 451 (2d Cir. 2002) (court's lack of jurisdiction "negate[s] litigant's chance of success" necessary for injunction). Specifically, plaintiffs have not alleged a redressable injury in fact.

At its "irreducible constitutional minimum," Article III standing requires a plaintiff, as the party invoking the jurisdiction of a federal court, to establish three elements: (1) "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotation marks and alterations omitted). For an alleged injury in fact to be "actual or imminent"

13

rather than impermissibly "speculative," "the injury must have already occurred or be likely to occur soon." *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 381 (2024). If the injury has not come to pass, it must be "*certainly impending*"; "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quotation marks and alterations omitted); *accord Murthy v. Missouri*, 603 U.S. 43, 58 (2024) ("because the plaintiffs request forward-looking relief, they must face a real and immediate threat of repeated injury" (quotation marks omitted)). The standing inquiry is "especially rigorous" where, as here, "reaching the merits of the dispute would force [the court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper*, 568 U.S. at 408 (quotation marks omitted).

Although standing "in no way depends on the merits of the plaintiff's contention that particular conduct is illegal," it "often turns on the nature and source of the claim asserted" in that standing depends on "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500-01 (1975).

### 1. Plaintiffs' Claims Were Properly Dismissed for Lack of Standing

Under these standards, plaintiffs' claims were properly dismissed. Plaintiffs have advanced two types of claims. One of those, regarding the termination of

14

grants issued to plaintiffs and their members, is still proceeding in the district court, and is not at issue in this appeal. (Br. 13). What is left before this Court is plaintiffs' challenge to NEH decisions about eliminating certain programs and offices within the agency structure. (Br. 13). Those are the types of claims that courts have repeatedly held are outside the power of the judiciary to determine. The marginal injury plaintiffs allege from that agency action, beyond the harm from actual termination of grants that is not at issue on appeal, does not implicate the type of concrete, legally protected interests, redressable by a judicial order, that suffice to give plaintiffs a personal stake in the outcome.

At core, plaintiffs "challenge the NEH's decision not to operate particular programs or offer particular opportunities in the future." (JA 636). But "federal courts lack jurisdiction over 'suits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations.'" *Johnson v. Becerra*, 111 F.4th 1237, 1244-45 (D.C. Cir. 2024) (quoting *Allen v Wright*, 468 U.S. 737, 759-60 (1984)); *accord Lujan*, 504 U.S. at 568 (plurality op.). Courts may not consider suits, such as this one, that seek to require an agency "to enforce and administer the laws in a particular manner"; otherwise they would become "'continuing monitors of the wisdom and soundness of Executive action.'" *Johnson*, 111 F.4th at 1245 (quoting *Allen*, 468 U.S. at 760; *accord Women's Equity Action League v. Bell*, 743 F.2d 42, 44 (D.C. Cir. 1984) (rule against consideration of particular implementation programs serves to avoid

15

courts' "broad and continued judicial superintendence of Executive Branch activity").

The district court correctly recognized that in bringing an action that challenges NEH's programmatic implementation of its statutory mandate, plaintiffs are "asserting an abstract general interest common to all members of the public." *Carney v. Adams*, 592 U.S. 53, 58-59 (2020) (quotation marks omitted). "[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'" *Id.* Rather than a "generalized grievance," "[t]he injury . . . must be particularized" and "must affect the plaintiff in a personal and individual way." *Hippocratic Medicine*, 602 U.S. at 381 (quotation marks omitted). Such generalized grievances are "most appropriately addressed in the representative branches," and therefore implicate both the injury and redressability prongs of the standing inquiry. *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982).

Here, plaintiffs' claims that NEH has eliminated certain program offices and grant programs represents the type of generalized complaint about agency behavior that is not appropriately adjudicated in federal court. If parties like plaintiffs could avail themselves of federal court jurisdiction and sue anytime an agency restructured, reshuffled its priorities, or eliminated certain discretionary programs, it would essentially turn federal courts into supervisors of agency activity. NEH continues to accept—and fund—applications in

16

all areas of the humanities, as defined by NEH's statute. (JA 547-48).[3] Plaintiffs, in essence, asked the district court to enforce the general manner in which NEH is currently carrying out the statute's directives.

Indeed, the fact that the NEH entirely eliminated the programs and offices at issue demonstrates that plaintiffs are situated identically to any other member of the public, confirming the district court's analysis. Plaintiffs have "not suffered any direct injury in the sense that they personally asked for and were denied a benefit granted to others," *Apache Bend Apartments,*

---

[3] *See also* Press Release, NEH Announces $75.1 Million for 84 Humanities Projects, Jan. 15, 2026, https://www.neh.gov/news/neh-announces-751-million-84-humanities-projects (announcing recently awarded NEH grants); Press Release, NEH Announces $34.79 Million for 97 Humanities Projects, Aug. 1, 2025, https://www.neh.gov/news/neh-announces-3479-million-97-humanities-projects (same); Grants, NEH, https://www.neh.gov/grants (last visited Feb. 13, 2026) (providing information about grant programs and funding opportunities); Press Release, NEH Announces Reorganization of its Grantmaking Offices, Programs, and Personnel, Aug. 20, 2025, https://www.neh.gov/news/neh-announces-reorganization-its-grantmaking-offices-programs-and-personnel (explaining that NEH was "merg[ing] the functions and staff of seven grantmaking offices and divisions into four new divisions to support projects that advance humanities research, education, public programs, infrastructure, and cultural preservation").

17

*Ltd. v. United States*, 987 F.2d 1174, 1178 (5th Cir. 1993)—the elimination of the programs means the potential grants were denied equally to all. Thus, the agency's decisions impact a broad swath of citizens, including any person or organization that seeks, or might seek at some later point, NEH funding or collaboration. Although standing "is not to be denied simply because many people suffer the same injury," where, as here, "'the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction.'" *Id.* (quoting *Warth*, 422 U.S. at 499).

Even in a case where a plaintiff personally wishes to apply for some government benefit, a claim may be held to be a nonjusticiable generalized grievance if the plaintiff cannot demonstrate it is "likely" as well as "able and ready" to apply. *Carney*, 592 U.S. at 60 (quotation marks omitted). A plaintiff "bears the burden of establishing standing"; accordingly the record must show that the injury is concrete and particularized, as well as redressable by a court order. *Id.* at 59-60 (quotation marks omitted). Merely setting out a potential applicant's "some day intentions" does not suffice. *Id.* at 64 (quotation marks omitted); *accord Lujan*, 504 U.S. at 564 & n.2 ("injury at some indefinite future time" not enough to demonstrate imminent harm).

Plaintiffs cannot establish a redressable injury under these standards. Much of the support they offered before the district court consists of backward-looking testimonials to the value of past activity by various NEH offices and programs. (JA 355-58, 360-62, 371-

18

75).[4] Other declarations rely on averments that plaintiffs or their members had unspecified "plans" for "potential future submissions," "anticipated requesting additional funds," or "would have applied," and speculation that "such funding is unlikely to be available" going forward (JA 357, 578, 579-81, 585)—the same kind of nonspecific "some day" intentions that the Supreme Court has rejected. *See MGM Resorts International Global Gaming Development, LLC v. Malloy*, 861 F.3d 40, 47-48 (2d Cir. 2017) (bare allegations of interest in development opportunities and exploratory studies without any "concrete plans to enter into a development agreement" or "serious attempts at negotiation" are insufficient); *Carney*, 592 U.S. at 65-66

---

[4] In particular, the injuries plaintiffs claim to have experienced as a result of the elimination of program offices are not sufficiently actual or imminent to confer standing. They assert that they or their members "have worked closely with staff" from the Office of Digital Humanities in the past, that the Office of Digital Humanities supported projects that they or their members valued, that they or their members will "likely lose access to funding opportunities" as a result of the elimination of certain offices, and that the Office of Data and Evaluation was designed to support humanities-related data collection and research that "would have helped faculty and administrators." (Br. 15-16, 34 n.5; JA 52, 355-58, 360-61). None of these vague and conclusory harms alleged to result from the elimination of those offices amount to the type of harm that is necessary to establish an injury in fact.

19

("bare statement of intent" without evidence that plaintiff was "'able and ready' to apply in the imminent future" insufficient); (JA 356-58, 579-81, 584-85, 586, 587-88, 589, 590, 592-93, 594-95).[5]

Even as to the few allegations of an ongoing process (JA 367, 378), plaintiffs cannot demonstrate a redressable injury in fact, as their case depends on applications to programs that no longer exist—that is, programs in which no applicant or any other person retains a cognizable interest. The injury necessary to demonstrate standing must be the "invasion of a legally protected interest." *Lujan*, 504 U.S. at 560; *accord Sprint Communications Co. v. APCC Services, Inc.*, 554 U.S. 269, 273 (2008); *Raines v. Byrd*, 521 U.S. 811, 819 (1997) ("We have also stressed that the alleged injury must be legally and judicially cognizable."). At bottom, plaintiffs' alleged injury is that the agency no longer offers certain funding opportunities or grant programs that plaintiffs favor. But they have identified no authority for the proposition that they

---

[5] If the Court were to conclude that plaintiffs have established an injury in fact with respect to the elimination of grant programs to which plaintiffs or their members applied or intended to apply, it should limit that holding to the elimination of those particular grant programs to which plaintiffs or their members actually applied, or took actual, concrete steps to apply, as opposed to those programs concerning which plaintiffs or their members merely aver that they derived past benefits from or intended to apply to someday in the future.

20

have a legally protected interest in which specific funding opportunities or grant programs the agency chooses to offer, or which offices or divisions the agency maintains.

Plaintiffs point to cases recognizing that the lost opportunity to compete or apply for a benefit may constitute an injury sufficient to confer standing. (Br. 22-29). But those cases are not comparable, as they involved parties blocked from competing for an existing benefit. *See Mantena v. Johnson*, 809 F.3d 721, 730-31 (2d Cir. 2015) (applicant for green card); *Coalition of MISO Transmission Customers v. Federal Energy Regulatory Commission*, 45 F.4th 1004, 1015 (D.C. Cir. 2022) (applicant for ongoing construction projects); *International Longshoremen's and Warehousemen's Union v. Meese*, 891 F.2d 1374, 1379 (9th Cir. 1989) (competitors for jobs); *see also Carney*, 592 U.S. at 60-66 (acknowledging "an aggrieved party need not allege that he would have obtained the benefit" to establish standing, but holding that plaintiff had not demonstrated standing where, among other things, he had not shown that "there were regular opportunities available" that he was foreclosed from applying for (quotation marks omitted)). As the district court observed, this Court's decision in *Mantena* demonstrates plaintiffs' misplaced reliance on these cases: there, the plaintiff "was already engaged in a formal adjudicatory process" but alleged a procedural defect prevented her from a concrete opportunity to prevail (JA 636); here, there is no process to undergo after NEH's decisions to eliminate certain programs, and plaintiffs offer only vague claims that they and their members might have applied for unspecified grants from certain

21

grant programs in the future had those programs not been canceled. While *CC Distributors, Inc. v. United States* involved the discontinuation of a contract program, the disappointed contractors claimed that the agency "violated the law by discontinuing [the program] without first conducting recompetitions for such contracts"; they therefore had a continuing stake in that potential right to recompete. 883 F.2d 146, 150-51 (D.C. Cir. 1989). As for *Global Health Council v. Trump*, where an agency downsized its programming, the grantees asserted harm not based on "expectations of receiving future grants or aid" but instead on "expectations set in existing contracts with the respective agencies." 153 F.4th 1, 11-12 (D.C. Cir. 2025). The issue of the ability to compete for funds was addressed as a matter of "redress[ing] the injuries to the grantees' finances" from the cancelation of existing grants. *Id. Global Health Council* thus does not support plaintiffs' theory of injury from the loss of ability to compete for programs that have been terminated.[6]

---

[6] Plaintiffs also cite *Teton Historic Aviation Found. v. DoD*, but injury was not disputed in that case. 785 F.3d 719, 724 (D.C. Cir. 2015). Plaintiffs describe the case as involving an agency that "stopped holding the auctions" at issue, but that is not accurate; the contested agency action was the reclassification of certain equipment the plaintiff wished to bid on such that that equipment could no longer be sold. *Id.* at 721-23. Thus that case did not involve a program that was no longer available.

22

Plaintiffs cannot surmount an additional hurdle to standing: their alleged harm is not redressable by the court order they seek. Putting aside the claims that are not before this Court, plaintiffs requested that the district court "[d]eclare as unlawful" and enjoin NEH's decisions "to eliminate or nearly eliminate entire divisions" and to "shut down entire programs." (JA 66; *accord* Br. 6 (issue is "elimination of grant programs" and "shuttering of program offices")). But restoration of an NEH "division," "office," or "program" would not redress any concrete injury plaintiffs allege they have suffered, as a restored office or division may not offer the same funding opportunities that plaintiffs wish to pursue. *See E.M. v. New York City Dep't of Education*, 758 F.3d 442, 450 (2d Cir. 2014) (plaintiff "must at least make a showing that there is a 'substantial likelihood that the relief requested will redress the injury claimed,'" as an "abstract decision without remedial consequence seems merely advisory . . . [and would] trespass[ ] on the provinces of the executive and legislature" (some quotation marks omitted; quoting *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 75 n. 20 (1978))).

In short, plaintiffs ask the Court to determine that the NEH should be run and structured according to plaintiffs' preferences. But it is not within the judicial power to question general NEH decisions about which funding opportunities to offer or which program offices and divisions to maintain. In carrying out NEH's mission, NEH Chairpersons appointed during various presidential administrations have sometimes added and sometimes eliminated grant programs and funding opportunities, and have restructured the agency in

23

various ways by creating or eliminating grant program offices. (JA 546). Moreover, in implementing Congress's statutory mandate, NEH frequently announces new funding opportunities for which scholars, researchers, and institutions may apply.[7] It cannot be the case that anytime NEH does so, it creates a legally actionable right, such that any party that may have planned to pursue a grant under the program has

---

[7] *See, e.g.*, Press Release, NEH International Opportunities, September 30, 2024, https://www.neh.gov/initiatives/international-opportunities (providing list of "international collaboration opportunities" for which NEH applicants could apply); Blog Post, Next deadline announced for Dangers and Opportunities of Technology Program, July 25, 2023, https://www.neh.gov/blog/next-deadline-announced-dangers-and-opportunities-technology-program (stating that the Office for Digital Humanities' "newest grant program, Dangers & Opportunities of Technology Perspectives from the Humanities (DOT), is now accepting applications for the October 11, 2023, deadline"); Press Release, NEH Announces Funding Opportunity for Museums and Historic Sites on the History of American Excellence, July 23, 2025, https://www.neh.gov/news/neh-announces-funding-opportunity-museums-and-historic-sites-history-american-excellence (announcing "new grant program to support exhibitions and historic site interpretations designed for public audiences").

24

standing to challenge the agency's decision to cease offering the program.[8]

_____

[8]    Because it concluded it lacked jurisdiction, the district court did not fully consider the merits of plaintiffs' claims. Rather, it suggested in a brief footnote that it is "likely" that the NEH's challenged decisions would be unreviewable because they are committed to agency discretion, but expressly declined to "examine [plaintiffs' claims] further." (JA 636 n.13). If this Court disagrees with the district court's jurisdictional ruling, it should remand for consideration of those arguments. *See, e.g.*, *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("[A] federal appellate court does not consider an issue not passed upon below."); *Brown v. City of New York*, 862 F.3d 182, 188 (2d Cir. 2017) ("appellee is [not] required, upon pain of subsequent waiver, to raise every possible alternate ground upon which the lower court could have decided an issue"); *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 184 (2d Cir. 2021) ("We generally refrain from considering issues not decided by the district court."). Moreover, Plaintiffs are incorrect to suggest that the government did not advance substantive arguments (Br. 49) before the district court with respect to the challenged decisions. (Dist. Ct. ECF No. 77 (asserting in support of government's motion to dismiss that plaintiffs' "claims and requests for relief present exactly the type of wholesale challenge that the APA forbids" and that the agency had "inherent discretion to make independent decisions about . . . organizational structure")); Dist. Ct. ECF No. 81 (arguing in opposition to plaintiffs' motion for preliminary injunction that plaintiffs had not

25

## 2. The Preliminary Injunction Was Properly Denied

Finally, even if this Court were to reverse the district court's dismissal of certain of plaintiffs' claims, it should still affirm the denial of a preliminary injunction. As the Court recently explained, the standard for establishing standing to achieve a preliminary injunction is higher than that on a defendant's motion to dismiss the complaint: at the pleadings stage, the plaintiff's allegations supporting its standing are presumed true, but to obtain a preliminary injunction, "a plaintiff's burden to demonstrate standing will normally be no less than that required on a motion for summary judgment," and therefore the plaintiff "cannot rest on . . . mere allegations . . . but must set forth by affidavit or other evidence specific facts" that establish its standing. *Do No Harm v. Pfizer Inc.*, 126 F.4th 109, 119 (2d Cir. 2025) (quotation marks omitted).

Even if the Court concludes the pleadings are sufficient for standing at this stage, plaintiffs have still failed to meet the higher threshold for a preliminary injunction. A preliminary injunction is "extraordinary and drastic" relief, "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 679-80 (2008) (quotation marks omitted). Movants must "bear the burden of showing that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities

---

"plausibly allege[d] that Defendants violated any federal statute by . . . eliminating divisions or programs")).

26

tips in their favor; and (4) an injunction is in the public interest." *Agudath Israel v. Cuomo*, 980 F.3d 222, 226 (2d Cir. 2020). For the reasons stated above, plaintiffs cannot establish any of those factors.

## CONCLUSION

### The order of the district court should be affirmed.

Dated:     New York, New York
           February 13, 2026

Respectfully submitted,

JAY CLAYTON,
*United States Attorney for the*
*Southern District of New York,*
*Attorney for Defendants-Appellees.*

MARY ELLEN BRENNAN,
RACHAEL DOUD,
JONAKI M. SINGH,
BENJAMIN H. TORRANCE,
  *Assistant United States Attorneys,*
      *Of Counsel.*